29499. HULSEY *v.* SOUTHEASTERN GREYHOUND LINES INC.

DECIDED MAY 21, 1942.

*C. H. Dalton,* for plaintiff.

*D. W. Mitchell, W. M. Henderson,* for defendant.

MacIntyre, J. The plaintiff alleges that the driver of the Southeastern Greyhound Lines Inc., while near "Bob's Place," which is about two miles south of the City of Dalton on the Dixie Highway, drove the bus of the defendant company from said highway and stopped near the plaintiff, who was an automobile mechanic of several years' experience, and requested the plaintiff to assist him in order that they might trace the wiring system of the bus and ascertain a defect in it. The engine of the bus was left running in order that the defect in the lighting system might be more easily discovered. The plaintiff knew that the motor was running. All of which is a common occurrence in the checking over of the wiring systems of motor vehicles. The driver of the bus and the plaintiff removed the baggage from the compartment under the bus, and the driver told the plaintiff "to run his hand up under and along the underside of said bus and see which way said wiring went so they could make openings from the inside of said bus and determine the defects complained of." It was dark under the bus and the plaintiff could not see under it. "Acting on the impulse relying on said command he did reach under the side of said bus and up in the direction of where defendant's agent was then guiding him in the location of said wires, and in so doing his left hand came in contact with some unknown mechanism of said bus in a way and manner that the index and second fingers were cut off below the first joints."

The plaintiff alleges that the defendant and its agent well knew the construction of said bus which was a more recent type, and knew that the engine and all the mechanism thereto was in the rear of said bus instead of in the front as in the older type, or by the exercise of diligence should have known of its construction and new arrangements, and could have readily determined that its construction was different from the older type in use, and that it could become and would be dangerous and would inflict injury on a person at the place where plaintiff became injured if the motor were left in motion during such an occurrence as was complained of, especially to one who was not familiar with the same or who had no knowledge of its workings.

If the bus driver had merely driven up to the station and asked the mechanic to check his lighting system and find where the defect was, and had there left the matter, undoubtedly there could have been no recovery. "A servant assumes the ordinary risks of his employment, and is bound to exercise his own skill and diligence to protect himself." *Southern Railway Co.* v. *Taylor,* 137 *Ga.* 704 (73 S. E. 1055). Then what effect does the additional allegation have, that the driver asked him, or even if you put it in the stronger language used in one paragraph of the petition, "commanded" him, to run his hand in a dark compartment up under the bus and see which way the wiring system went and thus enable them to repair the defect? There was no emergency requiring the plaintiff to expose himself to danger. He was not in such a position that if he did not comply with the order of the driver he would lose his job; but he was a mere expert employed to ascertain and fix the lighting system on the bus. It seems to us that the following rule is applicable here: "A servant is bound to exercise his own skill and judgment, so as to protect himself in the course of his employment, and the master is not regarded generally as warranting his safety. He is himself bound to exercise proper care, and can not claim indemnity from the master for an injury resulting to him which might have been prevented if he had himself been reasonably vigilant." *Daniel* v. *Forsyth,* 106 *Ga.* 568, 571 (32 S. E. 621).

The plaintiff does not pretend that he did not know the motor was running and that the machinery under the car also was running, or that the order to trace the wire in this dark compartment under the car carried any prohibition to look where he was sticking his hand, or to use a flashlight or any other means to disclose the condition of the dark compartment under the car, or to use any other means or caution as the mechanic might deem best; nor was there anything in the form of the order to disclose any emergency or hurry, or even anything to disturb the judgment of the mechanic. The plaintiff was an automobile mechanic, and we think the driver of the automobile was entitled to assume, when he asked him, or, even if you put it in the stronger language as used in one paragraph of the petition, "commanded" him, to put his hand under the bus and to trace the wires, whether in a dark or a lighted compartment, that the mechanic would protect himself by what-

ever caution was necessary, or at least would use ordinary care in ascertaining the peril of placing his hand in a dark compartment in the manner and under the circumstances. *Nelling* v. *Industrial Mfg. Co.*, 78 *Ga.* 260(3) ; *Southern Railway Co.* v. *Taylor*, supra; *Hendrix* v. *Vale Royal Mfg. Co.*, 134 *Ga.* 712 (68 S. E. 483) ; *Abercrombie* v. *Ivey*, 59 *Ga. App.* 296 (200 S. E. 551) ; *Flippin* v. *Central of Ga. Ry. Co.*, 35 *Ga. App.* 243 (132 S. E. 918) ; *Davis* v. *Georgia Coating Clay Co.*, 63 *Ga. App.* 265 (11 S. E. 2d, 60) ; *Strickland* v. *Foughner*, 63 *Ga. App.* 805 (12 S. E. 2d, 371) ; *Clance* v. *Melton*, 62 *Ga. App.* 628 (9 S. E. 2d, 200) ; *Salter* v. *Nugent*, 50 *Ga. App.* 187 (177 S. E. 513) ; *Haynie* v. *Foremost Dairies Inc.*, 54 *Ga. App.* 369 (187 S. E. 907).

Having considered all the allegations in the petition we think they disclose that the risk was such as would not be taken by an automobile mechanic of common prudence, so situated; and we think the taking of the risk by the servant in obedience to the request or order, if you so desire to call it, merely exposed him to one of the ordinary risks of his employment and that he can not recover. The court did not err in dismissing the petition on general demurrer.

*Judgment affirmed. Broyles, C. J., and Gardner, J.; concur.*