## 27594. STORY *v.* CROUCH LUMBER COMPANY.

DECIDED DECEMBER 1, 1939.

*R. J. Bacon,* for plaintiff.

*Rosser Malone, Fred W. Lagerquist Jr.,* for defendant.

STEPHENS, P. J. Clarence E. Story brought suit for damages on account of personal injuries against Crouch Lumber Company. The plaintiff alleged that he was employed by the defendant to do carpenter work in fixing certain counters and other fixtures in a store building; that he was under the direction and supervision of Britt Jones, who had been placed in charge of the particular work and given the plans and specifications and the directive authority

by the defendant as to how and what should be done; that the defendant, through Jones, was directing the plaintiff how and what to do in the premises throughout all the time and in regard to all the acts done and to be done by the plaintiff in the store; that while the plaintiff was so working Jack Crouch, supervising agent of the defendant, came to the store and abusively reprimanded Jones for not hurrying the job up faster, and caused Jones to become enraged; that shortly after Crouch left, Jones continued in a rage, and while in the work and directing and carrying on the work and operations of the defendant, and while engaged in the work of the defendant in supervising the work of the plaintiff, "as was the non-delegable duty of the defendant. to your plaintiff in the premises," Jones committed the acts hereafter complained of; that the plaintiff was required to swing some doors on the front side of the counter in the store, and asked Jones for directions as to which side the doors were to open on, and Jones, in a violent rage, failed to immediately give directions, and when plaintiff stooped to pick up a screwdriver in connection with his work Jones hit him in the back of the head with a two-by-two scantling; that this blow was administered without justification or excuse, and that the plaintiff was injured thereby.

By an amendment to the petition the plaintiff alleged that he stooped to pick up the screwdriver for the purpose and with the intention of swinging the doors of the counter as he should be directed by Jones, as soon as Jones should give the directions as to which side the doors were to open on; that plaintiff did not know at the time of the assault made on him by Jones that Jones was of a "violent and dangerous disposition and incompetent servant" by reason of his ungovernable temper and ferocious conduct; that Jones was an incompetent servant, "a ferocious and dangerous individual to have anything to do with, and that he had an ungovernable temper and was like a crazy man when his temper was aroused, and was a dangerous individual, and the said defendant company either knew or should have known that the said Jones was such a violent character when they hired him" and placed him to direct the plaintiff, and that it was a breach of duty owing to the plaintiff by the defendant that the defendant placed the plaintiff to work with such a character as Jones, who possessed such a "violent, dangerous and ungovernable and ferocious disposition and tempera-

ment;" that the rousing of Jones into such a rage, which produced the plaintiff's injury and precipitated the assault upon him "was done by the said Jack Crouch . . and the said assault upon your petitioner was both wilful and wanton;" and that all of the acts complained of as done by Jones were within the scope of his employment by the defendant. The defendant demurred to the petition. To the judgment sustaining the demurrer and dismissing the action the plaintiff excepted.

Where two workmen are engaged on the same job and are subject to the direction and control of the same master or employer they may be fellow servants although one has the right to direct the other in the performance of the particular work in which they are engaged. In *Moore* v. *Dublin Cotton Mills,* 127 *Ga.* 609, 624 (56 S. E. 839, 10 L. R. A. (N. S.) 772), it is stated: "In the present case there was evidence that N. S. West was superintendent over the hands of the Dublin Cotton Mills, and that he was the overseer. This alone was not sufficient to show that he was the vice-principal. The evidence showed further that he had charge of the work and the hands, and that the plaintiff was working under his orders. . . Before the servant would take rank as a vice-principal of the master, it must appear that he is vested with authority to give those orders which the servant of a master is entitled to regard as coming from the master himself. Orders in reference to mere matters of trivial detail amounting merely to supervision in the operation of the business may be properly entrusted to a servant, if the master has been free from negligence in the employment of the servant to whom he entrusts this duty; that is, many orders in the operation of a business are part of the mere supervision of the work." See *Denlon* v. *Buller,* 7 *Ga. App.* 267 (66 S. E. 810) ; *McDonald* v. *Eagle & Phenix Mfg. Co.,* 68 *Ga.* 839 (4), 844; *Hamby* v. *Union Paper Mills Co.,* 110 *Ga.* 1 (35 S. E. 297) ; *Cates* v. *Itner,* 104 *Ga.* 679 (30 S. E. 884).

The plaintiff, as appears from the allegations in the petition, was employed to fix counters and other fixtures in a store building. The duties of the servant Jones, as alleged in the petition, were to direct and supervise the plaintiff in the performance of this particular work. He had been given the plans and specifications of the work, and the authority to direct the plaintiff in the performance of this work. The nature of the work which Jones was per-

forming for the defendant was not a non-delegable duty of the master, but was a duty which the master could delegate to another to perform. Jones, in the performance of these duties, was acting as a fellow servant of the plaintiff, and not as the vice-principal of the defendant, his employer.

A master is not liable to a servant for injuries caused by the acts of a fellow servant—one who is not the vice-principal or the alter ego of the master. It appears from the petition that the plaintiff was injured by the acts of a fellow servant, and the defendant master is not liable unless it should appear that the master had been negligent in the selection of an incompetent servant. "The master is bound to exercise ordinary care in the selection of servants, and not to retain them after knowledge of incompetency." Code, § 66-301. "In suits for injuries arising from the negligence of the master in failing to comply with the duties imposed by section 66-301, in order that the servant may recover, it must appear that the master knew or ought to have known of the incompetency of the other servant . . and it must also appear that the servant injured did not know and had not equal means of knowing such fact, and by the exercise of ordinary care could not have known thereof." Code, § 66-303. See *Camilla Cotton Oil & Fertilizer Co.* v. *Walker,* 21 *Ga. App.* 603 (94 S. E. 855).

The plaintiff alleged that he did not know at the time that his fellow servant was incompetent and of a dangerous nature, and that the defendant either "knew or should have known that" such servant was of such violent character when it hired him. This means that the defendant was negligent in not knowing this. It nowhere appears that the plaintiff could not have discovered the incompetency and dangerous disposition of his fellow servant by the exercise of ordinary care, or that he did not have equal means with the master of knowing such facts, or that the defendant could have discovered such incompetency and dangerous character of plaintiff's fellow servant by the exercise of ordinary care. Plaintiff's petition as amended does not set out a cause of action because of an injury received through the wilful misconduct of an incompetent and dangerous fellow servant, hired by the master with knowledge, express or implied, of his incompetency.

The petition failed to state a cause of action and the judge properly sustained the general demurrer interposed thereto.

*Judgment affirmed. Sutton and Felton, JJ., concur.*